Nina CARTER and Luther Carter,
Plaintiffs,

v.

Keith H. ZAHN and Valerie Zahn,
Defendants.

No. W–3335.

United States District Court
D. Kansas.

June 10, 1965.

Lewis & Gray, Wichita, Kan., for plaintiffs.

Foulston, Siefkin, Powers, Smith & Eberhardt, Wichita, Kan., for defendants.

WESLEY E. BROWN, District Judge.

This civil action is currently before the court on defendants' motions to quash service of summons and for summary judgment.

It is alleged that on December 13, 1962, plaintiff Nina Carter was working for defendants in Wichita as a domestic and while going to the garage of defendants' home, defendants' dog caused plaintiff Nina Carter to fall backwards down the basement stairs. Plaintiff seeks $14,897.50 in damages. In this regard, the prayer in count one of the complaint lists only $4,897.50, but the itemization of damages in count one totals $14,897.50. Plaintiff Nina Carter also seeks $2,000 on behalf of her husband for loss of consortium and prays for a total of $16,897.50.

Defendant Valerie Zahn was personally served in Vermont by a deputy United States Marshal and defendant Keith Zahn was served by leaving a copy of the summons and complaint with his wife, defendant Valerie, at their usual place of residence in Vermont. Defendant Keith Zahn argues that the court did not acquire jurisdiction over him and that the service is void as to him as having been made in violation of state service statutes. Defendants base this argument on Judge Gard's comments concerning Kan.Stat.Ann.1964, 60–308 to the effect that the validity of substituted service is doubtful when made outside the State of Kansas.

Fed.R.Civ.P. 4 specifically provides for the leaving of copies of a complaint and summons at a defendant's usual place of abode with some person of suitable age and discretion residing therein. The language of the returns herein conclusively show that they were served with the language of Rule 4 in mind.

We need not interpret or construe the service provisions of the new Kansas Code. We seriously doubt if there is any real conflict between the Kansas Code and the Federal Rules, but

assuming arguendo that there is, it is now clear that Fed.R.Civ.P. 4 would control. Therefore, in cases of conflict between state service statutes and Federal Rule 4, the Federal Rule is the standard against which we are to measure the adequacy of service. Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

■ The service at bar passes muster under Federal Rule 4, and we therefore conclude that service on defendant Keith Zahn was adequate. Defendant attacks the jurisdiction only of defendant Keith Zahn—apparently on the service ground only. We assume therefore that defendants are not claiming nonexistence of a jurisdictional base for the present action. Parenthetically, it would appear to be contemplated by the Kansas Code.

We conclude that the defendants' motion to quash service is not good and it will be denied.

Defendants base their summary judgment motion entirely on the passage of time. As stated above, the alleged claim for relief arose on December 13, 1962 and defendants were served on January 7, 1965, more than two years after the accrual of the claim for relief. The complaint was filed on December 30, 1964, also more than two years after accrual of the claim for relief. Thus we need not decide what effect Hanna v. Plumer, supra has on Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949).

The parties have briefed the matter on the assumption that the new Kansas Code, effective after accrual of the claim for relief and before the suit was filed (i. e., January 1, 1964) controls. We will decide the matter accordingly. The new Kansas statute of limitations for tort actions remains basically unchanged at two years. See Kan.Stat.Ann.1964, 60–513.

Plaintiffs argue that the statute of limitations was tolled for sufficient time so that the action is not barred.

Defendant Keith Zahn has filed an affidavit in which he swears, inter alia, that in May of 1963, he and his family left the state for a five week vacation to Vermont, and that he returned in late June 1963 to resign his position with Boeing of Wichita and move permanently to Vermont; that sometime in late June or July of 1963 he and his family did move permanently from the state; that he left a forwarding address with a Wichita bank where he had closed out an account; that he left a forwarding address with his employer, with the Post Office and with at least three personal friends in the Wichita area; and that he left a forwarding address with his landlord.

Plaintiffs' attorney has also filed an affidavit in which he swears, inter alia, that on February 21, 1963 he wrote defendants' purported insurance carrier concerning his clients' claim; that he received an answer from the insurance company on March 19, 1963 which he answered on March 28, 1963; that on April 17, 1963 he received a copy of a letter from the insurance company to defendants denying liability; that on May 13, 1963 he filed suit in the Sedgwick County Kansas District Court against defendants and that the sheriff's return indicated defendants were not to be found in Sedgwick County; that on at least three occasions he attempted to obtain defendants' new address from their Wichita landlord, who had no information as to defendants' whereabouts; that on December 5, 1963 the Wichita Credit Bureau reported it was unable to locate defendants after a diligent search; that in January of 1964, the directory of Glenn Falls, New York [apparently a place of former residence of defendants] was checked and no address for defendants could be found therein; that on May 11, 1964 the Sedgwick County case against defendants was dismissed for lack of prosecution; that thereafter he checked with the Credit Bureau at least monthly for a lead to defendants' where-

abouts; that on December 22, 1964, the Credit Bureau informed him that the Aderondack Credit Service, Inc. of Glenn Falls, New York had information that defendants were living at "Stevens Orchard, Orwell, Vermont;" and that on December 30, 1964 he filed the present suit listing defendants' address as Orwell, Vermont.

The Kansas tolling statute provides that,

> "if after the cause of action accrues he [meaning a defendant] depart from the state, or abscond or conceal himself, *the time of his absence* or concealment *shall not be computed* as any part of the period within which the action must be brought. This section shall not apply to extend the period of limitation as to any defendant *whose whereabouts are known and* upon whom service of summons can be effected under the provisions of article 3 of this chapter." Kan. Stat.Ann.1964, 60–517 (emphasis added).

Article 3 to which reference is made in the tolling statute provides for service outside the state.

Plaintiffs in their complaint alleged that defendants "absconded" from the state in May of 1963. Defendants argue that "abscond" as used in the tolling statute refers to the activity of concealing oneself within the borders of the state, relying on two nineteenth century Kansas cases. When the present tolling statute was presented to the Kansas legislature, the drafting committee's comment was: "This section is the same as G.S. 60–309." See Kan. Judicial Council Bull., p. 152 (Special Report November 1961).

Since the apparent intent of the new tolling provision was to leave essentially unchanged the former tolling provision, the body of case law developed under the old code should still be applicable. We therefore agree with defendants that whether or not defendants "absconded" is immaterial to the case at bar.

But the tolling provision clearly provides that the time of a defendant's absence from the state shall not be computed as part of the period of limitations *unless* defendant's "whereabouts are known" *and* service can be effected under Article 3. Since the claim for relief at bar arose out of defendants' activities within the state, service was authorized under Article 3 outside the state.

The critical question thus becomes whether defendants' whereabouts were known. The Kansas statute is silent as to *whom* must know of defendants' whereabouts. It seems to us that the only reasonable and logical construction to be placed on the phrase is "known to plaintiff," or by the exercise of due diligence should have been known to plaintiff.

By defendant Keith Zahn's own affidavit, defendants were absent from the state for five weeks in May and June of 1963 and were absent from the state continuously from approximately July 1, 1963. Thus the statute of limitations was tolled during the five week absence in May–June of 1963; it ran for whatever period defendants were back in the state in June of 1963; and it again tolled commencing with defendants' departure from the state approximately July 1, 1963.

As we read the Kansas tolling statute, the statute of limitations will not run so long as defendant is absent from the state *unless* plaintiff knows or should have known his whereabouts and can get out-of-state service on defendant through Article 3.

As applied to the case at bar, the statute of limitations was tolled for five weeks in May and June of 1963 and was tolled after approximately July 1, 1963 until plaintiffs became aware of defendants' whereabouts in December of 1964.

There is a conflict between the two affidavits on file—i. e., Mr. Zahn swears

he left a forwarding address with his landlord and plaintiffs' attorney swears the landlord informed him he did not know defendants' whereabouts. Nothing is on file from the landlord. But in any event, plaintiffs did make a search for defendants and did exert efforts to find defendants' whereabouts.

We therefore conclude that the tolling statute is applicable to the case at bar and that plaintiffs' action is not barred by the statute of limitations.

■ One further item should be mentioned. Mr. Carter is a named party plaintiff to the case at bar. His only connection with the case appears to be that his wife is suing for loss of consortium for his benefit. Under Kan.Stat. Ann.1964, 23–205, the right of action for loss of consortium to a husband vests *solely* in the wife, and any recovery therefor shall be for the husband's benefit.

■ We conclude therefore that Luther Carter has been misjoined as a party plaintiff in the case at bar. Fed.R. Civ.P. 21 provides that misjoinder is not grounds for dismissal of an action and that a misjoined party may be dropped on the motion by a party or on the court's own initiative. Accordingly, Mr. Luther Carter will be dropped as a party plaintiff to this action; plaintiff Nina Carter's recovery, if any, on her second claim for relief [loss of consortium] will be for Luther's benefit.

In summary we hold that,

(a) Defendants' motion to quash is denied

(b) Defendants' motion for summary judgment is denied

(c) Plaintiff Luther Carter shall be dropped as a party plaintiff to the action.

Under the present posture of this case, it is inappropriate for the court to attempt to narrow the issues of the case under Fed.R.Civ.P. 56(d).

Prevailing counsel shall prepare, circulate and submit an appropriate order.