442

Luiet Jamal COLEMAN, Appellee,

v.

Haskell MONROE, Chancellor of the University of Missouri, Columbia; Gerald Brouder, Provost of the University of Missouri, Columbia, in his capacity as Interim Chancellor of the University of Missouri, Columbia; Suzanne Holland, Interim Vice Chancellor for Student Affairs of the University of Missouri, Columbia; Gary L. Smith, Director of Admissions and Registrar of the University of Missouri, Columbia, James R. Devine; Robert Leavene, Jr.; Joel A. Hartman; Perry G. Parrigin; Marion Bonner Mitchell; Marion H. Typpo, in their capacity as Faculty Members of the Student Conduct Committee for the University of Missouri–Columbia Campus, Appellants.

Nos. 92–1421, 92–1669.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1992.

Decided Oct. 13, 1992.

Kelly K. Mescher, Columbia, Mo., argued (Kelly Mescher, Nancie D. Aulgur and Kathleen Murphy Markie on the brief), for appellants.

Walter H. Bley, Columbia, Mo., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Luiet Jamal Coleman, a varsity basketball star at the University of Missouri, with the help of a girlfriend employed at the University Bookstore, stole $688.07 by using phoney bookstore refund slips. After receiving and waiving his *Miranda* rights, Coleman signed a written statement for University police in which he admitted the thefts, committed over a three-month period.

Since the University Student Code of Conduct prohibits "theft of ... property of the University ...," section 200.010.5 Collected Rules and Regulations of the University of Missouri (Appendix p. 275), unremarkably, Coleman became the subject of a disciplinary proceeding. Coleman's lawyer obtained an agreement that the proceeding should be delayed until after a criminal prosecution had been completed. Eventually, Coleman entered a plea of guilty to misdemeanor stealing and received a sixty-day suspended sentence, ten days in the county jail to be served on weekends, and two years of supervised probation.

After notice, the conduct hearing was set to commence before a Student Conduct Committee convened according to the rules

of the University. Coleman appeared with counsel and stipulated to the following:

(1) On April 2, 1991, Mr. Coleman presented a forged refund slip to the cashier at the University Bookstore, and the cashier noticed that a portion of the slip had not been filled out correctly.

(2) When the cashier mention the mistake to Mr. Coleman, Mr. Coleman told him he was in a hurry and quickly left the store.

(3) The cashier noticed that Mr. Coleman claimed to have received his slip on a day that the store was closed. He turned this information over to the Assistant Manager on April 3, 1991.

(4) The Assistant Manager discovered that there were no white store copies to match the six green slips Mr. Coleman had presented. She called the police.

(5) On April 5, 1991, at approximately 9 a.m., University police officers Nichols and Hollis went to Mr. Coleman's apartment and told him that they wanted to talk to him. Mr. Coleman invited them into his apartment. The officers asked Mr. Coleman to come down to the police station with them. Mr. Coleman said he wanted to go to his bedroom to finish dressing.

(6) Officer Nichols accompanied him and saw a green University Bookstore receipt. Mr. Coleman asked Officer Nichols, "What's this all about? What are you doing here[?]"

(7) At that point, Officer Nichols picked up the green receipt and said, "This is what it's about."

(8) Mr. Coleman immediately grabbed at the slip, hitting the officer's hand, and ripped the slip out of the officer's hand leaving Officer Nichols with only part of the slip.

(9) Mr. Coleman immediately went into his closet, and his portion of the slip disappeared.

(10) At that point, the officers placed Mr. Coleman in handcuffs and took him to the police station.

(11) After receiving his Miranda warnings, Mr. Coleman waived them. He gave the police a statement, admitting that he had stolen from the University Bookstore using the six forged refund slips.

(12) Subsequently, Mr. Coleman pleaded guilty to a misdemeanor charge of stealing.

Appendix pp. 94–96 (Order filed February 6, 1992).

After a hearing, at which he testified, Coleman was suspended for one semester by the conduct tribunal. He appealed the decision to the Chancellor of the University. With his attorney, Coleman met with the Chancellor, presented additional information and made argument. The Chancellor conducted a thorough review of the full record and upheld the one-semester suspension. Coleman then filed suit in the district court under 42 U.S.C. § 1983, alleging several violations of his constitutional rights.

Coleman contended that the actions of the appellants, acting for the University, violated his substantive due process and equal protection rights guaranteed by the Fourteenth Amendment. After a one-day trial, the district court imposed from the bench a "preliminary and permanent injunction" prohibiting the suspension because the suspension was "a damned outrage" that "sticks in my craw." The court later embellished the bench ruling with a written order that simply found, without further explanation, that the University disciplinary proceeding was "arbitrary and capricious" and violated Coleman's "constitutionally protected rights to due process and equal protection." The staff members of the University involved in the disciplinary proceeding appeal. Finding no "sticks in my craw" test in the Constitution, we reverse.

It is impossible to glean from the record any evidence that the imposed discipline resulted in "arbitrary and capricious" treatment or violated any "equal protection" rights. Although the appellants speculate about the reasons for the district court action, we refuse to do so. We have, however, examined the record with care and find absolutely no evidence of a constitutional violation of any kind. Almost all of the contentions of Coleman at the trial

were directed toward alleged procedural violations and evidence that the other participants, two female employees of the Bookstore, received longer but suspended suspensions from the University.

The procedures followed easily meet the requirements we established in *Esteban v. Central Missouri State College*, 415 F.2d 1077, 1089 (8th Cir.1969), *cert. denied*, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970). The district court, in utterances from the bench, seemed to seek to impose criminal procedures in this University disciplinary context. "[S]chool regulations are not to be measured by the standards which prevail for the criminal law and for criminal procedure." *Id.* at 1090. Also, the alleged shortcomings mentioned by the district court in his bench comments do not translate into equal protection violations. *San Antonio Indep. Sch. Dist. v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Prostrollo v. University of South Dakota*, 507 F.2d 775, 781 (8th Cir. 1974), *cert. denied*, 421 U.S. 952, 95 S.Ct. 1687, 44 L.Ed.2d 106 (1975). The others involved in the criminal activity were not similarly situated with Coleman[1] and to view a one-semester suspension for stealing $688.07 in a sophisticated, three-month long scam as "outrageous" is difficult, if not impossible, to understand. On the evidence adduced, there was no constitutional violation and, accordingly, no constitutional tort as required by section 1983.

Accordingly, we reverse the decision of the district court and remand this case with instructions to dissolve the injunction, to vacate all other substantive orders, and to dismiss this matter with prejudice.

---

**1.** For instance, only Coleman hit a police officer, ripped evidence from the officer's hand, and went into a closet to destroy the evidence.