Tina Marie SELLERS, By and Through her guardian, natural mother, and next friend, Joann SELLERS; Albert F. Deuser; Phyllis Menke, Appellees,

v.

Robert J. BAER; John J. Frank; James E. Mosbacher; William H. Young; Mayor Vincent Schoemehl; Lawrence J. King; United States of America, Defendants,

David Vecera, National Park Ranger; Edward Bridges, National Park Ranger; Dennis Burnett, Chief Ranger, Appellants.

Tina Marie SELLERS, By and Through her guardian, natural mother, and next friend, Joann SELLERS; Albert F. Deuser; Phyllis Menke, Appellees,

v.

Robert J. BAER; John J. Frank; James E. Mosbacher; William H. Young; Mayor Vincent Schoemehl; Lawrence J. King; United States of America, Defendants,

David Vecera, National Park Ranger; Edward Bridges, National Park Ranger; Dennis Burnett, Chief Ranger, Appellants.

Tina Marie SELLERS, By and Through her guardian, natural mother, and next friend, Joann SELLERS; Albert F. Deuser; Phyllis Menke, Appellees,

v.

Robert J. BAER; John J. Frank; James E. Mosbacher; William H. Young; Mayor Vincent Schoemehl; Lawrence J. King, Appellants,

United States of America; David Vecera, National Park Ranger; Edward Bridges, National Park Ranger; Dennis Burnett, Chief Ranger, Defendants.

Nos. 93–2261, 93–2686, 93–3753.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1994.

Decided July 8, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 16, 1994 in No. 93–2261.

Edward R. Cohen, Washington, DC, argued (Frank W. Hunger, Stephen B. Higgins, Barbara L. Herwig and Edward R. Cohen on the brief), for appellants.

James J. Wilson, St. Louis, MO, argued (Ronnie L. White and James J. Wilson on the brief), for appellants Robert J. Baer, et al.

Robert H. Pedroli, Clayton, MO, argued (James V. Lankford and Robert H. Pedroli, on the brief), for appellees.

Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BOWMAN, Circuit Judge.

Before us are appeals from the District Court's denial of motions by certain of the defendants for summary judgment on the ground of qualified immunity. We reverse.

## I.

In the evening of July 4, 1986, at the annual Veiled Prophet fair at the Jefferson National Expansion Memorial in St. Louis, two National Park Rangers, Officers David Vecera and Edward Bridges, observed fairgoer Larry Deuser, in the midst of a milling throng of some 600,000 to 750,000 persons, randomly grabbing women by the buttocks. This conduct angered the women, and apparently some of their male companions as well. The rangers warned Deuser to keep his hands to himself, but he did not take this warning seriously. When Deuser urinated in public, the rangers arrested him. Deuser argued with the rangers and made offensive remarks to female fairgoers as the rangers escorted him to the rangers' tent on the fairgrounds.

The rangers met at the tent with Chief Ranger Dennis Burnett and decided to turn Deuser over to the St. Louis police. Because the St. Louis police department was, as a result of the fair and its attendant problems, too busy to process Deuser, the rangers, Burnett, and St. Louis police officer Lawrence King agreed to remove Deuser from the fairgrounds and set him free. Deuser was to be released far enough away from the fairgrounds that he would not have time to return to cause more trouble.

According to the rangers and King, they then took Deuser in a city police vehicle driven by King to the nearest police station, ten blocks from the fairgrounds, pulled into the parking lot behind the federal building, and allowed Deuser to leave the vehicle. Before they released him, the officers made Deuser promise not to return to the fairgrounds. Deuser did not have any money with him when he was released.

About an hour and one-half later, at approximately 10:30 p.m., a motorist struck and killed Deuser on an interstate highway about a mile and one-half from where Deuser had been released.[1] At the time of his death, Deuser was highly intoxicated, his blood-alcohol level testing 0.214.

Tina Marie Sellers (Deuser's minor daughter, through her mother) and Albert Deuser and Phyllis Menke (Deuser's parents) brought this suit in federal court, raising various state and federal claims, including claims under *Bivens*[2] against Vecera, Bridges, and Burnett, and under 42 U.S.C. § 1983 against, in their official capacities, King and the members of the Board of Police Commissioners of the city of St. Louis.[3] These claims allege, inter alia, that the conduct of Vecera, Bridges, Burnett, and King violated Deuser's Fifth and Fourteenth Amendment rights to substantive due process.[4]

In August 1990, the District Court granted the motion of Vecera, Bridges, and Burnett for summary judgment based on, in part, qualified immunity with respect to the *Bivens* claims. In April 1993, however, the court granted the plaintiffs' motion for reconsideration and vacated its prior order. In the same ruling, the court denied King's and the members of the Board's motions for summary judgment with respect to the § 1983 claims in which King claimed qualified immunity with respect to those claims and both King and the members of the Board asserted that King's conduct did not amount to a constitutional violation. In so doing, the court relied on, and factually distinguished, *Gregory v. City of Rogers*, 974 F.2d 1006 (8th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). Vecera, Bridges, Burnett, and King appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985) (allowing interlocutory appeal from denial of summary judgment motion based on qualified immunity).[5]

## II.

The moving parties are entitled to summary judgment if there is no genuine issue of material fact and they are entitled as a matter of law to judgment in their favor. *Pentel v. City of Mendota Heights*, 13 F.3d

---

1. The plaintiffs theorize that the officers actually released Deuser at an intersection adjacent to the location on the freeway where he was killed. The plaintiffs also allege that the officers deliberately placed Deuser in harm's way. These allegations are unsupported by any evidence in the summary judgment record, and thus we do not consider them.

2. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3. Mayor Vincent Schoemehl, who is a defendant in this case, is a member of the Board.

4. The complaint alleges violations by the officers of Deuser's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. We consider only whether Deuser's Fifth and Fourteenth Amendment rights to substantive due process could have been violated, however, because the plaintiffs have failed to advance any reasonable explanation as to how any other rights protected by these constitutional amendments could have been violated by the officers.

5. The members of the Board also appeal. But as their motion for summary judgment was based on grounds other than qualified immunity, their interlocutory appeal of the District Court's denial of summary judgment as to them is not properly before us.

1261, 1263 (1994). In this appeal we must decide whether the officers are entitled to summary judgment on the ground of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Our inquiry into the qualified immunity question thus must consider both the nature of the plaintiffs' claims and the state of the law with respect to such claims.

#### A.

 The plaintiffs claim that Vecera, Bridges, Burnett, and King violated Deuser's Fifth and Fourteenth Amendment substantive due process rights. Although government generally has no duty under the Due Process Clause to protect individuals from harm imposed by third parties, *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195–96, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), the plaintiffs allege that the officers violated Deuser's substantive due process rights by removing him from the fair and leaving him in a parking lot while intoxicated, away from his friends, and without funds, thus placing him in a dangerous position he otherwise would not have faced.

In *DeShaney,* the Supreme Court was asked to decide whether a social services agency's failure to prevent continuing physical abuse of a child, of which the county was aware, constituted a deprivation of due process. The Court ruled that the state had no obligation to protect the child from harm caused by a third party (his father), even though the state knew of the danger faced by the child. 489 U.S. at 196–97, 200–01, 109 S.Ct. at 1006. The Court reasoned, in part, that due process acts as a limitation on the state's power to act, and does not guarantee an individual's safety or security. *Id.* at 195, 109 S.Ct. at 1003. While the Court acknowledged that a state may be obligated to protect an individual from harm imposed by a third party when the state holds the individual in custody against the individual's will, *id.*

at 199–200, 109 S.Ct. at 1005, the Court reasoned that, as the child was not in the state's custody, the state had neither played a role in creating the dangers the child faced, nor had it even taken any action that placed the child in a position worse than that in which he otherwise would have been, *id.* at 201, 109 S.Ct. at 1006. Some courts, including this one, have taken an extra analytical step and concluded that, if a state does take action that places an individual in a position of danger the individual otherwise would not have faced, the state may violate due process. *See Gregory,* 974 F.2d at 1010; *Wells v. Walker,* 852 F.2d 368, 370 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

Simply stating the broad outline of the constitutional right allegedly violated, however, does not end our inquiry. In *Anderson v. Creighton,* 483 U.S. 635, 636–37, 107 S.Ct. 3034, 3037, 97 L.Ed.2d 523 (1987), the plaintiffs sued a federal law enforcement officer who participated in a search of the plaintiffs' residence that allegedly violated the Fourth Amendment. The Supreme Court reviewed the holding of this Court that the officer was not entitled to qualified immunity because, in the absence of probable cause and exigent circumstances, an individual has a clearly established right to be free in his or her home from a warrantless search. *Id.* at 640, 107 S.Ct. at 3039. The Supreme Court reversed, concluding that we had formulated our statement of the constitutional right at too high a level of generality. Instead, the Court explained,

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.

*Id.* Thus, the Court held, the proper inquiry was the objective, fact-specific question "whether a reasonable officer [in the defendant's position] could have believed [the] warrantless search to be lawful, in light of clearly established law and the information

the searching officers possessed." *Id.* at 641, 107 S.Ct. at 3039.

■ As was the case in *Anderson,* the plaintiffs here have stated the constitutional right allegedly violated at too high a level of generality. It is particularly important for a complaint alleging a violation of substantive due process to state with particularity the precise nature of the alleged violation. *See Collins v. City of Harker Heights,* —— U.S. ——, ——, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). The issue in this case for purposes of qualified immunity is whether reasonable officers in the position of Vecera, Bridges, Burnett, and King would have understood they were violating Deuser's constitutional rights when they removed him from the fairgrounds, where he had been making a great nuisance of himself, and set him free in a parking lot, near a police station and behind a federal building, away from his companions, without funds, and in an intoxicated state, rather than retain custody and charge him with disorderly conduct. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Latimore v. Widseth,* 7 F.3d 709, 712 (8th Cir.1993) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 433 (1994). We believe the answer to this question must be no.

The officers' conduct, in light of the circumstances they faced, was not such that reasonable officers in their position would have known they were violating Deuser's constitutional rights. The officers were trying to control the behavior of a crowd of more than 600,000 fairgoers. Because of the fair, the St. Louis police department was hard-pressed to meet its most important responsibilities and was unable to engage in the routine processing of every disorderly or drunken individual. And Deuser's conduct, although obnoxious and requiring his remov-

al from the fairgrounds, was not so threatening that it was necessary to jail him for the protection of others.

Instead, the officers chose a course of action that was seemingly beneficial to Deuser, in that he would not have charges pressed against him, and beneficial to the officers and other fairgoers, in that Deuser would be removed as a source of trouble at the fair and the officers could attend to other urgent or troublesome situations that might arise there. Deuser was an adult male, and the officers left him near a police station at approximately 9:00 p.m. on a midsummer evening, where he could have called for a ride.

Indeed, the officers may have placed Deuser in a safer position than that in which they found him. Once away from the fair, Deuser no longer was able to drink, and, given the reactions to Deuser's conduct from his displeased fellow fairgoers, Deuser may have faced a much greater risk of bodily harm had he stayed at the fair. The hindsight view of the events of July 4, 1986, and the fact that Deuser ultimately walked onto an interstate and met his death there, do not change the calculus of the situation faced by the officers, dealing as they were with the exigent circumstances presented by the large crowd at the fair.

■ In light of the circumstances in which the officers acted, we believe it plain that their actions did not violate any constitutional principles that are clearly established under current law.[6] Accordingly, Vecera, Bridges, Burnett, and King are entitled to qualified immunity.

### B.

*Gregory,* on which the District Court relied when it denied the officers qualified immuni-

6. Even if we could conclude that the plaintiffs have articulated an alleged violation of a constitutional right that is clearly established under current law, we still would have to conclude that the officers are entitled to qualified immunity. In 1986, the year of the events in question in this case, *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), *Gregory v. City of Rogers,* 974 F.2d 1006 (8th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993), and *Wells v. Walker,* 852 F.2d 368 (8th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989), had not yet been decided. It was not until we decided *Wells* in 1988 that this Circuit first included language in an opinion to the effect that a state may violate due process by placing an individual in a position of harm he otherwise would not have faced. Accordingly, the officers are entitled to qualified immunity because even the right broadly asserted in this case was not clearly established in 1986.

ty, is not contrary to the result we reach today. In that case, a police officer stopped a driver for running a red light. The driver's two passengers, who occupied the back seat of the car, were intoxicated. The officer denied knowing of their intoxicated condition. After determining that the driver had an outstanding arrest warrant, the officer agreed to let the driver follow him to the police station to clear up the matter. The driver parked on the street at the station and went inside, leaving the passengers seated in the car. The passengers subsequently drove away and were involved in a single-car accident in which one of them was killed, the other seriously injured. The officer was sued under § 1983 for allegedly having left the passengers in a position of danger.

This Court concluded that the plaintiffs had not offered sufficient evidence to create a triable issue on the factual question of whether the officer knew the passengers were intoxicated. The plaintiffs thus had failed to support the specific allegations they raised in their complaint and summary judgment for the officer therefore was appropriate. 974 F.2d at 1010–11. *Gregory* was not decided on the ground of qualified immunity, and the court did not express an opinion as to whether, if the plaintiffs' allegations had been factually supported, summary judgment for the officer on the ground of qualified immunity would have been in order. In the case before us, in contrast, we conclude that, even assuming the officers knew that Deuser was intoxicated, the officers' actions did not violate a clearly established constitutional right and the officers thus are entitled to qualified immunity.

The District Court distinguished the present case from *Gregory*, reasoning that the officer in *Gregory* had not taken the passengers into custody, did not place them in a position of danger, and did not have reason to know they were intoxicated. In the present case, the District Court reasoned, the officers had taken Deuser into custody and removed him from the fairgrounds, and there was a factual dispute as to whether the officers knew Deuser was intoxicated. For the reasons discussed above, we conclude that despite these distinctions between *Gregory*

and this case the officers are entitled to summary judgment on the ground of qualified immunity.

We are mindful that there are cases in which allegations of deprivations of substantive due process based on police officers' decisions to place or leave vulnerable individuals in clearly dangerous circumstances have been allowed to go to trial. *See, e.g., Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989) (police officer stranded a lone woman in a high-crime area at 2:30 a.m. after arresting the driver of the car in which she was riding and impounding the car), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979) (officer stranded three young children on a busy freeway after arresting their uncle, who had been driving the vehicle in which the children were passengers, despite the uncle's pleas to take the children to a phone booth or police station so they could call their parents). Other courts faced with similar situations, however, have concluded that there could be no § 1983 liability. *See Walton v. City of Southfield*, 995 F.2d 1331, 1337–39 (6th Cir.1993) (discussing cases). In any event, in the present case the officers did not place or leave Deuser in circumstances that presented any clear danger to him. We hold that the conduct of the officers did not violate a clearly established constitutional right of which a reasonable officer would have known, and the officers therefore are entitled to qualified immunity.

## C.

■ The plaintiffs contend that the officers are not entitled to qualified immunity because they were performing "ministerial," rather than "discretionary," duties. To support this argument, the plaintiffs rely upon a St. Louis police department regulation requiring the department's officers to take intoxicated individuals either to a detoxification center or a police station so they can arrange for transportation, as well as a regulation written for rangers working the fair that told the rangers which holdover facility to use for

arrested individuals. We reject this contention.[7]

■■■ The exception to qualified immunity for functions that are "ministerial" rather than "discretionary" is quite narrow. For qualified immunity purposes, a duty is "ministerial" only where the statute or regulation leaves no room for discretion—that is, it "specif[ies] the precise action that the official must take in each instance." *Davis v. Scherer*, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984). In addition, the ministerial-duty exception applies only where it is the violation of the ministerial duty that gives rise to the cause of action for damages. *Id.* at 194 n. 12, 196 n. 14, 104 S.Ct. at 3019 n. 12, 3020 n. 14. The situation before us clearly does not meet the *Davis* criteria. "[I]n our view the Supreme Court's discussion of the ministerial-duty exception in *Davis* establishes that the exception is too narrow to comprehend this case." *McIntosh v. Weinberger*, 810 F.2d 1411, 1432 (8th Cir. 1987), *vacated and remanded on other grounds sub nom. Turner v. McIntosh*, 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 898 *and cert. denied*, 487 U.S. 1217, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988).

In the case before us the plaintiffs make no claim that they are entitled to damages simply because the regulations they cite were violated. Instead, they seek damages based on their claims that the Fifth and Fourteenth Amendments were violated. Thus, the issue before us is whether the officers' conduct violated any clearly established constitutional rights, not whether the officers may have violated departmental regulations. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir.1993). Even assuming that the officers violated the departmentally imposed duties and that the duties were purely ministerial,[8] the officers still are entitled to qualified immunity.

■■■ Additionally, we note our belief that the ministerial-duty exception to the qualified immunity defense is dead letter. First, we have been unable to find any post-*Davis* cases in which a court has denied qualified immunity because the official was performing a ministerial task. Furthermore, in light of the limitations placed on the exception by *Davis*, we are unable to imagine the case in which the ministerial-duty exception ever could apply. Other circuits also have expressed skeptical views of the distinction between discretionary and ministerial duties. *See Horta v. Sullivan*, 4 F.3d 2, 12 (1st Cir.1993) ("[I]nsofar as the concept of discretionary function is relevant at all in the immunity sphere, . . . ."); *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir.1986) ("Thus allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right."), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Coleman v. Frantz*, 754 F.2d 719, 727 (7th Cir.1985) ("[A]s a matter of public policy, it would be unwise to engage in a case by case determination of Section 1983 immunity based upon the ministerial versus discretionary nature of the particular official act challenged.").

### III.

■■■ Finally, we believe the record demonstrates not only that the officers are entitled to qualified immunity, but also that they did not violate Deuser's constitutional rights. The plaintiffs allege that the officers intentionally, willfully, recklessly, and grossly negligently placed Deuser in a position of greater danger. Gross negligence on the part of the officers—even assuming their

---

7. In asserting liability against the members of the Board of Police Commissioners, the plaintiffs allege that the Board had a policy under which officers could choose to transport individuals away from the fairgrounds and release them. This assertion, of course, supports a conclusion that King was performing a discretionary function. We choose, however, to rest our rejection of the plaintiffs' "ministerial-duty" argument on other grounds as to all the officers, including King.

8. The officers were swamped with work and were attempting to control an extremely large crowd. Because there is no evidence that the cited regulations were intended to govern the conduct of officers in all situations, we are not persuaded, and do not intend to suggest, that the officers lacked discretion to decide what to do with disorderly individuals they encountered at the fair. *See supra* note 7.

conduct rose to such a level—is not actionable under *Bivens* or § 1983. *Myers v. Morris,* 810 F.2d 1437, 1468 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). After carefully reviewing the record and in light of the above discussion, we hold as a matter of law that no reasonable fact-finder could conclude that the officers intentionally, willfully, or recklessly placed Deuser in a position of greater harm when they removed him from the fairgrounds and released him behind the federal building in a parking lot adjacent to the police station. Accordingly, the officers' conduct could not have amounted to a denial of Deuser's substantive due process rights. *See Gregory,* 974 F.2d at 1010; *Wells,* 852 F.2d at 370.

### IV.

■ The plaintiffs also claim that the members of the Board violated Deuser's constitutional rights by encouraging its officers to remove individuals from the fair and release them off the fairgrounds. Citing *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the members of the Board, attempting to appeal the District Court's denial of their motion for summary judgment, argue that their policies did not cause Deuser's injuries and that the policies were not enacted with the mental state necessary for liability to be imposed.

■ As mentioned earlier in this opinion, the members of the Board did not seek summary judgment on the ground of qualified immunity, and we therefore lack jurisdiction over their interlocutory appeal of the District Court's order. *See supra* note 5. Thus the appeal of the members of the Board must be dismissed.[9] However, because of our holding that Deuser's constitutional rights were not violated, the plaintiffs' § 1983 claims against the members of the Board necessarily must fail, and on remand the members of the Board will be entitled to dismissal of those claims. *See Cole,* 993 F.2d at 1334 ("A vital element of any section 1983 claim is a showing that a right secured by the Constitution or federal law was violated."); *Gregory,* 974

F.2d at 1012 ("Having concluded [the officer] did not violate [the plaintiffs'] constitutional rights, the [plaintiffs] cannot press a claim against the City....").

### V.

We reverse the District Court's order denying summary judgment for Vecera, Bridges, Burnett, and King on the ground of qualified immunity, direct that their motions for summary judgment on the plaintiffs' constitutional claims be granted and that the *Bivens* claims against Vecera, Bridges, and Burnett and the § 1983 claims against King be dismissed, direct that the § 1983 claims against the members of the Board be dismissed because Deuser's substantive due process rights were not violated, and remand for further proceedings consistent with this opinion.

---

**9.** Similarly, King's appeal from the District Court's denial of his motion for summary judgment with respect to the plaintiffs' state-law

claims is not properly before us in this interlocutory appeal, and is dismissed.