Bobby **DAVIS** and Lloyd Marlo Davis, her husband, Plaintiffs,

v.

**FULTON COUNTY, ARKANSAS; Fulton County Quorum Court, individually and as members of the Quorum Court; Paul Martin, individually and as Sheriff of Fulton County, Arkansas; and Charles Bost, individually and as a Deputy Sheriff of Fulton County, Arkansas, Defendants.**

Civ. No. B–C–93–21.

United States District Court, E.D. Arkansas, Northern Division.

April 28, 1995.

Nunc Pro Tunc Feb. 13, 1995.

Karen Pope Greenaway, Summerford, Greenaway & Zelinski, Attys. at Law, Fayetteville, AR, for plaintiffs Bobby Davis, Lloyd Marlo Davis, husband of Bobby Davis.

Michael R. Rainwater, Robert A. Russell, Jr., Duncan & Rainwater, Little Rock, AR, for defendants Fulton County, Ark., Fulton County Arkansas Quorum Court, individually and as members of Quorum Court, Paul Martin, individually and as Sheriff of Fulton County, Ark., Charles Bost, individually and as a Deputy Sheriff of Fulton County, Ark.

## MEMORANDUM OPINION AND ORDER

EISELE, District Judge.

Before the Court is defendants' Motion to Dismiss Amended Complaint, filed in connection with plaintiffs' Amended Complaint alleging a cause of action under 42 U.S.C.A. § 1983 (West 1994), as well as several state law tort claims. Plaintiffs have filed a response to this motion, opposing the relief sought. The Court has jurisdiction over this federal claim pursuant to 28 U.S.C.A. § 1331 (West 1993), as well as supplemental jurisdiction over these state law claims pursuant to 28 U.S.C.A. § 1367(a) (West 1993). For the reasons expressed in the following opinion, defendants' motion will be granted in part and denied in part.

### I.

As a preliminary matter, the Court notes that although plaintiffs' Amended Complaint (Docket No. 17) refers to Mr. Lloyd Marlo Davis as a named plaintiff, all of the claims advanced therein relate exclusively to the harms allegedly suffered by Mrs. Bobby Davis at the hands of a third-party assailant. Moreover, none of these alleged harms afford Mr. Davis a cause of action under the legal theories raised in the Amended Complaint. The constitutional violation at issue in the § 1983 claim is plainly an alleged deprivation of Mrs. Davis' Fourteenth Amendment rights, see discussion *infra*, and § 1983 does not afford Mr. Davis an independent cause of action based upon constitutional deprivations allegedly suffered by his wife. *Coon v. Ledbetter*, 780 F.2d 1158, 1160–61 (5th Cir.1986) (citing cases); *see Flittie v. Solem*, 827 F.2d 276, 280 (8th Cir.1987); *cf. Gora v. Costa*, 971 F.2d 1325, 1328–29 (7th Cir.1992). Furthermore, the state law tort claims advanced in the Amended Complaint are likewise premised upon harms allegedly suffered by Mrs. Davis, and Arkansas law does not afford Mr. Davis standing to present any independent tort claim based upon injuries suffered by his wife alone. *See Deason v. Farmers & Mer-*

chants Bank of Rogers, Ark., 299 Ark. 167, 173, 771 S.W.2d 749, 753 (1989). Since Mr. Davis has failed to advance a legal theory, *e.g.*, loss of consortium,[1] that would entitle him to relief under the facts alleged in the Amended Complaint, the Court must conclude that he has been improperly designated as a plaintiff. *See Carter v. Zahn*, 37 F.R.D. 556, 560 (D.Kan.1965); *see also* 7 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1683 at 443–45 (2d ed. 1986). Accordingly, the Court will *sua sponte* terminate Mr. Davis' status as a plaintiff in this action. *See* Fed.R.Civ.P. 21; *see also Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir.1982) (a district court has broad discretion under Rule 21 to determine whether it is appropriate to drop a party). Consequently, the term "plaintiff" will hereinafter refer exclusively to Mrs. Davis.

### II.

Defendants first argue that plaintiff's § 1983 claim should be dismissed for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). In evaluating the merits of this motion, the Court is required to accept the allegations of plaintiff's Amended Complaint as true. *Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994). Moreover, the Court may grant defendants' motion only if, after so viewing the pleadings, it is patently clear that there is no set of facts that plaintiff could prove thereunder which would entitle her to relief under § 1983. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Forbes v. Arkansas Educ. Television Communication Network Found.*, 22 F.3d 1423, 1427 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994).

Plaintiff has alleged the following facts in her Amended Complaint which, as discussed above, must be accepted as true. Plaintiff is

---

1. The tort of loss of consortium permits a person to recover for whatever losses that individual incurs as a natural result of the tortfeasor's injuring his or her spouse. See *Johnson Timber Corp. v. Sturdivant*, 295 Ark. 622, 647, 752 S.W.2d 241, 253, *vacated on other grounds*, 295 Ark. 663–B, 758 S.W.2d 415 (1988); see also *Prosser and Keeton on the Law of Torts*, § 125 at 931–35 (W. Page Keeton, ed., 5th ed. 1984).

a resident of Salem, Arkansas who, along with her husband, owns and operates a local grocery store. Plaintiff's store is located directly in front of the Fulton County Detention Center (FCDC), the operation of which is controlled, in varying degrees, by all of the above-named defendants. Amended Complaint ¶¶ 14–15, 22–23, 26. On May 13, 1992, plaintiff was working alone in her store when she was approached by Lawrence D. Hull, who then grabbed her and attempted to force her into a bathroom in the rear of the store. When plaintiff resisted, Hull threatened to kill her, and, when plaintiff ultimately submitted, Hull brutally raped and assaulted her. Hull was subsequently convicted in an Arkansas state court of second degree assault for his attack upon plaintiff. Amended Complaint ¶¶ 18–19.

■ At the time of this attack upon plaintiff, Hull was a pretrial detainee in the custody of the Fulton County Sheriff's Department (the Sheriff's Department), where he was awaiting the disposition of outstanding criminal charges.[2] Hull was housed in the FCDC while in the Sheriff's Department's custody, and had been given the status of a "trusty" detainee, which allowed him to be periodically released from his cell while performing various tasks for Fulton County law enforcement personnel. Immediately prior to his attack upon plaintiff, Hull had been released from the FCDC by Deputy Sheriff Bost, who had directed Hull to unload some groceries from a police car parked behind plaintiff's store. Deputy Sheriff Bost allowed Hull to leave the FCDC unescorted and unsupervised while performing this task.

After releasing Hull, Deputy Sheriff Bost left the FCDC on personal business, and was later dispatched to respond to a domestic disturbance. As a consequence, Hull was left outside the confines of the FCDC, and beyond the supervision of the Sheriff's Department, for an extended period of time, and it was this unrestricted freedom which afforded Hull the opportunity to attack plaintiff. Amended Complaint ¶¶ 16, 27, 35.

Deputy Sheriff Bost's decision to allow Hull to leave the FCDC unsupervised on May 13, 1992 was not an isolated incident. Indeed, Sheriff Paul Martin and the Fulton County Quorum Court (the Quorum Court) had approved and adopted policies which allowed the FCDC's trusty detainees to be released unsupervised when performing tasks for law enforcement personnel.[3] Amended Complaint ¶¶ 21–23. In fact, plaintiff had seen Hull on several prior occasions washing police cars outside the FCDC while wearing his trusty detainee uniform, and on none of these occasions was Hull under the direct supervision of any member of Fulton County's law enforcement personnel. Amended Complaint ¶ 20. Moreover, these policies regarding trusty detainees did not prohibit Deputy Sheriff Bost from allowing Hull to leave the FCDC unsupervised, even though both he and the other named defendants had knowledge of Hull's prior criminal acts and his propensity for violence, as well as Hull's prior record of sexually deviant and assaultive behavior. Amended Complaint ¶¶ 24, 28–34.

**2.** Plaintiff's Amended Complaint does not indicate the crime for which Hull was being held. However, defendants have indicated that Hull was then charged with burglary, theft of property, and criminal attempt. Brief in Support of Defendants' Motion to Dismiss Amended Complaint at p. 1 (Docket No. 19). The record does not indicate the ultimate disposition of these charges.

Additionally, since Hull had not then been convicted of any crime, it must be assumed that he was in custody because of his inability to post an appearance bond. See Ark.Code Ann. § 16–84–110 (Michie Supp.1993); Ark.R.Crim.P. 9.2(b), (c) (Michie 1994). In the context of such pretrial detention, the purpose of holding the detainee in custody is not penal, but is, rather, simply

to insure the detainee's appearance and availability for trial. See Craig v. State, 257 Ark. 112, 115–16, 514 S.W.2d 383, 384–85 (1974); see also Stack v. Boyle, 342 U.S. 1, 5, 72 S.Ct. 1, 3–4, 96 L.Ed. 3 (1951).

**3.** Plaintiff has not indicated (nor is there any information in the record to indicate) whether defendants' trusty policies were limited to pretrial detainees, or whether they extended to persons convicted of crimes as well. Accordingly, the Court will use the term "trusty detainee" throughout this opinion. However, it must be remembered that when plaintiff's allegations are viewed in the most favorable light and afforded the benefit of all reasonable inferences, it appears (or at least it is arguable) that defendants' trusty policies were not so limited.

### III.

 Plaintiff's federal cause of action is based upon 42 U.S.C.A. § 1983 (West 1994), which provides in relevant part:

> Every person who, under color of any ... custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 is a remedial statute. It " 'is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver, supra,* —— U.S. at ——, 114 S.Ct. at 811 (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). Therefore, in order to evaluate plaintiff's § 1983 claim, the Court must look to the allegations of her Amended Complaint for a description of the constitutional right(s) alleged to be at issue. *See Collins v. City of Harker Heights,* 503 U.S. 115, 123–27, 112 S.Ct. 1061, 1068–69, 117 L.Ed.2d 261 (1992); *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) (en banc) (*Gregory II* ), cert. denied, —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993). In her Amended Complaint, plaintiff alleges that as a result of defendants' conduct, as outlined above, she was "deprived ... of her liberty interests and the right to be secure in her person without due process of law." Amended Complaint ¶ 45. Thus, it is clear that plaintiff's § 1983 claim is premised upon an alleged violation of her rights secured by the Due Process Clause of the Fourteenth Amendment.[4] Accordingly, for plaintiff to establish a *prima facie* case under § 1983 for a deprivation of her Fourteenth Amendment

due process rights, she must show: (1) that defendants' actions were taken under color of state authority, *Monroe v. Pape,* 365 U.S. 167, 172–87, 81 S.Ct. 473, 476–84, 5 L.Ed.2d 492 (1961); (2) that defendants' actions impacted upon a constitutionally-protected right, *Paul v. Davis,* 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 570–78, 92 S.Ct. 2701, 2705–10, 33 L.Ed.2d 548 (1972); (3) that defendants owed plaintiff a duty of care to protect this constitutional right, *Collins v. City of Harker Heights, supra,* 503 U.S. at 120–21, 112 S.Ct. at 1066; and (4) that defendants breached such a duty of care, thereby resulting in a "deprivation" of that right within the meaning of § 1983. *Daniels v. Williams,* 474 U.S. 327, 329–33, 106 S.Ct. 662, 663–66, 88 L.Ed.2d 662 (1986).

 Defendants do not dispute that their actions, as outlined above, were taken under color of state law, nor do they dispute that they are "persons" within the meaning of § 1983. *See Franco v. Moreland,* 805 F.2d 798 (8th Cir.1986); *see also McGautha v. Jackson County,* 36 F.3d 53, 56–57 (8th Cir.1994). Neither do they dispute that plaintiff enjoys a general liberty interest, secured by the Fourteenth Amendment, to be free from unjustified physical assaults upon her person, *see Gregory v. City of Rogers,* 921 F.2d 750, 753 (8th Cir.1990) (*Gregory I* ), reh'g granted and opinion vacated, 939 F.2d 524 (8th Cir.1991), opinion on reh'g, 974 F.2d 1006 (8th Cir.1992) (en banc), cert. denied, —— U.S. ——, 113 S.Ct. 1265, 122 L.Ed.2d 661 (1993); *cf. Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560, 564 (8th Cir.1988), or that her full enjoyment of this liberty interest was necessarily restricted by Hull's attack.[5] Rather, defendants argue that because the attack upon plaintiff was committed by Hull, a private individual, rather than by an agent of the state,[6] they cannot be said

---

4. "No state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

5. Of course, Hull's actions, standing alone, could not result in a constitutional deprivation, as it is well-established that the Constitution does not usually require private persons to respect the constitutional rights of others. *See Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *see also The Civil Rights*

*Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883) (private individuals were not liable under the Civil Rights Act of 1875, a historical predecessor to § 1983).

6. Clearly, Hull did not become a state actor simply by virtue of the fact that he was in the state's custody. *See, e.g., Nobles v. Brown,* 985 F.2d 235, 237–38 (6th Cir.1992). Moreover, since there is no allegation in plaintiff's Amended Complaint that Hull's attack was taken at the

to have deprived her of a constitutionally-protected liberty interest. Stated another way, defendants' motion to dismiss is premised upon their assertion that the Constitution does not impose upon them any general duty to protect plaintiff (or any other member of the public) from physical harm caused by private individuals, and that accordingly they cannot be said to have effected a "deprivation" within the meaning of § 1983. ·

Given our Nation's republican system of government, it is not surprising that the Supreme Court has concluded that the Fourteenth Amendment does not, as a general matter, "require[ ] the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Since the Fourteenth Amendment was enacted "to protect the people from the State, not to insure that the State protected them from each other," *id.* at 196, 109 S.Ct. at 1003, it follows that this amendment does not impose upon the states any absolute duty to protect their citizens from harm at the hands of private individuals.[7] *See id.* at 195, 109 S.Ct. at 1002–03; *Ricketts v. City of Columbia*, 36 F.3d 775, 779 (8th Cir.1994); *Gregory II, supra*, 974 F.2d at 1009. However, while the Fourteenth Amendment does not impose any such absolute duty upon the states, it may, under limited circumstances, require a state to protect a discrete sub-class of its citizens from harm by private actors. Indeed, the Supreme Court has itself recognized one such exception to the *DeShaney* rule. Thus, if a "special relationship" exists between the state and the victim, *i.e.*, if the state has seriously limited the victim's ability to protect herself from third-persons, the state may be obligated by the federal constitution to protect that individual from private harms.[8] *See Youngberg v. Romeo*, 457 U.S.

request of any state official, defendants cannot be held liable, under § 1983, for Hull's conduct under an agency-type theory. *Compare, e.g.*, *Conner v. Donnelly*, 42 F.3d 220 (4th Cir.1994).

7. Courts often characterize the *DeShaney* decision as holding that the states have no duty to provide for the protection of their citizens. Strictly speaking, this is an inaccurate and overbroad reading of *DeShaney*. While no such obligation is required by the federal constitution, it simply does not follow that the states (or their municipal subdivisions) have absolutely no obligation (*i.e.*, no obligation imposed by sources other than the Constitution) to protect their citizens from private harms. Indeed, it can be argued that such a conclusion would run counter to the most fundamental principles of political theory. It has long been theorized that one of the primary reasons that an individual is willing to surrender his otherwise unrestricted liberty to a sovereign is to secure the sovereign's protection from others. This is the "social contract" theory of government that is familiar to students of political philosophy. *See* Immanuel Kant, *Concerning the Common Saying: This May Be True in Theory, but It Does Not Apply in Practice* pt. II, *reprinted in Kant's Political Writings* 73–87 (Hans Reiss, ed. & H.B. Nisber trans. 1970); John Locke, *Two Treatises of Government* 318–49 (Peter Laslett, ed., 1988); Jean Jacques Rousseau, *The Social Contract* (Charles Frankel ed. & trans. 1947); *see also* Robert Nozick, *Anarchy, State, and Utopia* (1974); John Rawls, *A Theory of Justice* (1971). Moreover, it appears that this theory was not unknown, and indeed seems to have informed, our Nation's founders. *See* John Dickinson, *Observations on the Constitution Pro-*

*posed by the Federal Convention, reprinted in The Debate on the Constitution (Part Two)*, 408–413 (Bernard Bailyn, ed. 1993); *The Federalist* No. 2 (John Jay); Neal Riemer, *James Madison: Creating the Constitution* 12 (1986); *cf. The Federalist* No. 16 (Alexander Hamilton), Nos. 37, 45–46 (James Madison). However, ours is a nation of dual sovereigns, and as the Founding Fathers only vested the federal government with the responsibility of safeguarding the national security, *see* U.S. Const. pmbl., they left the task of providing the people with their "contractual right" to protection from private harms entrusted to the states. *See The Federalist* No. 17 (Alexander Hamilton), No. 45 (James Madison); *cf.* U.S. Const. amend. X. Thus, while a state's failure to protect its citizens from private harms does not run afoul of any obligation imposed by the federal constitution (and hence is not actionable under § 1983), such a failure may be violative of the obligations imposed by the state's (or municipality's) own charter. *Cf. United States v. Cruikshank*, 92 U.S. (2 Otto) 542, 549–51, 23 L.Ed. 588 (1875); *Wells v. Walker*, 852 F.2d 368, 372 (8th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

8. Some courts, though not yet the Eighth Circuit, have also· concluded that if a "special relationship" exists between the state and an assailant, the state may be constitutionally required to protect its citizens from that individual. *See Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994); *Cornelius v. Town of Highland Lake, Ala.*, 880 F.2d 348, 353 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

307, 317–20, 102 S.Ct. 2452, 2458–60, 73 L.Ed.2d 28 (1982); *Estelle v. Gamble*, 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976); *see also DeShaney v. Winnebago County Dep't of Social Servs.*, *supra*, 489 U.S. at 192–200, 109 S.Ct. at 1001–06; *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir.1993); *cf. Restatement (Second) of Torts* § 320 (1965). The Eighth Circuit, along with other courts of appeals, has recognized another such exception and has held that if the state takes some action that "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced," the state will be constitutionally required to protect that person from harm by private third parties.[9] *Gregory II*, *supra*, 974 F.2d at 1010; *see also Sellers ex rel. Sellers v. Baer*, 28 F.3d 895, 899 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995); *Dorothy J. v. Little Rock Sch. Dist.*, *supra*, 7 F.3d at 733; *cf. Restatement (Second) of Torts* § 319 (1965). This theory for imposing § 1983 liability in this circuit has its direct origins in the Court of Appeals' decisions in *Wells v. Walker*, *supra*, and *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir.1990), though it can also be derived (and is hence consistent with) the Supreme Court's decisions in *DeShaney v. Winnebago County Dep't of Social Servs.*, *supra*, and *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). As these decisions make clear, the *Wells–Freeman* test involves a two-part inquiry for determining § 1983 liability. In order to satisfy the *Wells–Freeman* test, a plaintiff must show: (1) that the state took some affirmative action that had the effect of increasing her risk of harm; and (2) that the state's action was, in some way, specifically directed toward her such that the increase in her risk of harm was greater than that faced by members of the general public. Further, it must be remembered that these two requirements are conjunctive in the context of a "failure to protect" case (also known as a "right of protection" case). A state actor cannot be liable under § 1983 absent an affirmative act creating an increased risk of harm, *see Gregory v. City of Rogers*, *supra*, 974 F.2d at 1011; *see also DeShaney v. Winnebago County Dep't of Social Servs.*, *supra*, 489 U.S. at 201–03, 109 S.Ct. at 1006–07, nor can he be held liable if his actions were not so targeted at the plaintiff such that she faced a greater risk of harm than did the public generally. *See Martinez v. California*, *supra*, 444 U.S. at 284–85, 100 S.Ct. at 558–59; *see also Wells v. Walker*, *supra*, 852 F.2d at 370–71.

 Given the facts and the procedural posture of this case, the Court is satisfied that no "special relationship" can be held to have existed between plaintiff and defendants, as there have been no facts alleged to suggest that defendants acted in any way to limit plaintiff's ability to provide for her own protection. *See Dorothy J. v. Little Rock Sch. Dist.*, *supra*, 7 F.3d at 732; *but cf. Cornelius v. Town of Highland Lake*, *supra*, 880 F.2d at 355–56. While it could be argued that such a relationship existed between defendants and Hull, by virtue of the trusty status conferred upon him by defendants, *cf. Cornelius v. Town of Highland Lake*, *supra*, 880 F.2d at 356–58; *Nishiyama v. Dickson County*, 814 F.2d 277, 280–81 (6th Cir.1987) (en banc), the Court does not believe that the Eighth Circuit would adopt such an approach to § 1983 liability. The Court of Appeals has stated unequivocally that its definition of "special relationship" does not "extend beyond prison or prison-like environments," *i.e.*, those instances where the state has limited a person's ability to protect herself from third-party attacks. *Harpole v. Arkansas Dep't of Human Servs.*, 820 F.2d 923, 927 (8th Cir.1987). And while that court has, in its post-*Harpole* decisions, taken a more expansive view of § 1983 liability by adopting the "affirmative act/special danger" analysis which underlies *Wells*, *Freeman*, and their

---

**9.** As Judge Susan Webber Wright, a well-respected judge in this district, has noted, in most other circuits this theory of § 1983 liability is viewed as merely another species of "special relationship" liability. *Dorothy J. v. Little Rock Sch. Dist.*, 794 F.Supp. 1405, 1419 n. 9 (E.D.Ark. 1992), *aff'd*, 7 F.3d 729 (8th Cir.1993). However, the Eighth Circuit has not yet adopted such an analysis, and the import of that court's refusal to do so will soon become apparent.

progeny,[10] it has not indicated its intent to retreat from its prior definition of "special relationship." In the absence of such an indication, it is not appropriate for this Court to ignore the doctrinal distinctions adopted by the Court of Appeals. It therefore follows that before § 1983 liability may be imposed on any of the defendants, the Court must be satisfied that their individual actions placed plaintiff, as distinguished from the general public, in a position of heightened danger such that each became obligated under the Constitution to protect her from Hull's attack.

■■■ Although not without some grave reservations, the Court concludes that, in light of the prevailing precedent, plaintiff has alleged sufficient facts which, when taken as true, support the conclusion that Deputy Sheriff Bost, in his individual capacity, owed plaintiff such a constitutional duty of protection. This conclusion is premised upon two key factual allegations which, as discussed above, must be taken as true. First, the Court is satisfied that Deputy Sheriff Bost, while acting pursuant to a custom and/or policy adopted by the other defendants, engaged in a course of affirmative conduct that placed plaintiff "in a position of danger th[at] [she] would not otherwise have faced." *Gregory II, supra,* 974 F.2d at 1010. To understand this conclusion, it may be helpful to recognize what this case is **not**, namely a case where a prisoner harmed an individual after effecting an escape that was in no way facilitated by any affirmative act of a state agent.[11] Rather, by granting Hull an extended and unsupervised release from the FCDC pursuant to a policy and/or custom then in force, Deputy Sheriff Bost became an active (albeit unwitting) participant in bringing about Hull's attack upon plaintiff, as he provided Hull with "the necessary means [*i.e.,* unrestricted freedom from the FCDC] ... to

commit his crime." *Nishiyama v. Dickson County, Tenn., supra,* 814 F.2d 277 at 281. Indeed, the Court can perceive little practical difference between this case and one in which a jailor simply gives his keys to a prisoner and then turns his back while the prisoner exits the jail. Thus, the Court believes that the "affirmative act" requirement of the *Wells–Freeman* test has been met in this case, at least in so far as Deputy Sheriff Bost is concerned.

Second, the Court also believes that, given the controlling precedent, Deputy Sheriff Bost's actions were sufficient to satisfy the second prong of the *Wells–Freeman* test, since by providing Hull with "the specific opportunity to commit his crime," *id.,* his acts had the effect of creating a danger that was special (though not necessarily unique) to plaintiff. According to plaintiff's allegations, when Hull was released by Deputy Sheriff Bost he was directed "to unload groceries from the police car *parked behind [plaintiff's] store.*" Amended Complaint ¶ 16 (emphasis added). Thus, not only did Hull's release create a danger to the public at large (as Hull was known to have exhibited sexually deviant and assaultive propensities, Amended Complaint ¶¶ 24, 28–34), it also resulted in a danger specific to plaintiff, since Deputy Sheriff Bost directed Hull to proceed unsupervised to a location in close proximity to plaintiff's store. While a state official's action which "merely" creates a heightened danger to the general public is not actionable under § 1983, *see Dorothy J. v. Little Rock Sch. Dist., supra,* 7 F.3d at 734, the Court does not believe that such was the only danger that resulted in this case.

■■■ Rather, in light of the controlling law, the Court feels compelled to conclude that a jury could find that the events alleged to have transpired resulted in plaintiff, as

**10.** The Court agrees with Judge Wright that, in so far as *Harpole* suggests that "failure to protect" liability under § 1983 is limited to prison-like situations, "*Harpole* has been overruled in substance if not in name." *Dorothy J. v. Little Rock Sch. Dist., supra,* 794 F.Supp. at 1420. However, in light of the "affirmative act/special danger" analysis adopted in expanding this liability, the Court, with all due respect, cannot agree with Judge Wright's tacit conclusion that

*Wells* and *Freeman* represent the Eighth Circuit's adoption of the expanded definition of "special relationship" approved in other circuits.

**11.** Under such facts, defendants could not be held liable to plaintiff under § 1983. *See de Jesus Benavides v. Santos,* 883 F.2d 385, 387–88 (5th Cir.1989); *Commonwealth Bank & Trust Co. v. Russell,* 825 F.2d 12, 14–17 (3d Cir.1987).

opposed to members of the general public, being placed in a special, confrontational encounter with a person she alleges had exhibited violent propensities, and that these allegations could, therefore, "support a finding of a ... special danger to [plaintiff] in the context of a violation of [her] due process rights." *Wells v. Walker, supra,* 852 F.2d at 371 (citation omitted). Although, as the preceding discussion indicates, Deputy Sheriff Bost's § 1983 liability ultimately rests upon an exceedingly slender reed, namely the mere happenstance of the location of the grocery-laden police car, the Court believes that this conclusion is compelled by the Eighth Circuit's decision in *Wells v. Walker.* Indeed, the present case is factually similar to *Wells v. Walker,* in that the harm that befell that victim (her murder) directly resulted from the state's releasing a violent individual (a parolee) in close proximity to a store owned by the victim,[12] and the only fact which (arguably) resulted in a specific increase in that victim's risk of harm was the rather unfortunate circumstance of her store's close proximity to the assailant's release point.[13] *Id.* at 369–71; *see also Cornelius v. Town of Highland Lake, supra,* 880 F.2d at 356–59 (correctional officers, municipal officials and the municipality held liable under § 1983 after "minimum custody" prisoners working in a community work program outside the prison kidnapped and terrorized a woman); *Nishiyama v. Dickson County, supra,* 814 F.2d 277 at 280–83 (police officers, county officials and the county held liable under § 1983 after a trusty inmate murdered a woman after stopping her with a police car he was permitted to use unsupervised).[14] Al-

12. Although the state action in *Wells* was taken pursuant to a statutory mandate, as opposed to an informal custom such as that alleged in this case, this is not a sufficient basis to distinguish *Wells.* Section 1983, by its express terms, applies equally to actions taken pursuant to a statute, as well as to those taken pursuant to an informal policy or custom. *See Monell v. Department of Social Servs. of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

13. Although the Court of Appeals ultimately affirmed the dismissal of the complaint in *Wells v. Walker,* it did not do so by concluding that the victim did not have a constitutional "right of protection," but rather because she failed to allege sufficient facts to establish that she was "deprived" of that right within the meaning of § 1983. *Id.* at 371–72.

14. While recognizing its obligation to construe § 1983 in accordance with the decisions of the Eighth Circuit, the Court feels compelled to comment upon what it perceives as the unsoundness of that court's efforts, through *Wells v. Walker* and its progeny, to define the state's "duty to protect" by reference to whether the state's actions vis-a-vis third-party assailants were in some way directed toward a specific individual. Quite frankly, this is a distinction that is highly artificial and, as the above discussion makes clear, its rigid application can easily yield unsatisfying results. For example, if Hull had been released from the FCDC without having been told to unload groceries from the car near plaintiff's store, or if he had been told to unload a car parked in a vacant lot across the street from plaintiff's store (or down the block, etc.), it would appear that plaintiff's § 1983 claim would fail, simply because such action would have "only" caused an increased danger to the general public. Whether a state has a "duty to protect" should not turn upon such niceties—indeed, it seems counterintuitive to conclude that the state may be liable for acts which threaten only one person, but not for those which threaten the safety of all its citizens. Either such a duty should accrue whenever the state's affirmative actions vis-a-vis third-party assailants have the effect of increasing the risk of harm to anyone (*i.e.,* to the general public), or no such obligation should be held to exist in these circumstances. *Compare, e.g., Nishiyama v. Dickson County, Tenn. supra, with Wells v. Walker, supra.*

However, if the "right to protection" was established as suggested, this mode of analysis would not necessarily create "§ 1983 liability whenever a state actor has increased the risk of harm from private sources." *Dorothy J. v. Little Rock Sch. Dist., supra,* 7 F.3d at 734. Since such liability stems from an "affirmatively created or enhanced danger [of] ... 'a limited range and duration,'" *id.* at 733 n. 4 (citation omitted), the identity (and location, etc.) of the person injured would be taken into account in determining whether a sufficient causal nexus exists between the state's actions and the resulting harm. *See, e.g., Martinez v. California, supra,* 444 U.S. at 285, 100 S.Ct. at 559; *Gazette v. City of Pontiac, supra,* 41 F.3d at 1066; *cf. Commonwealth Bank & Trust Co. v. Russell, supra,* 825 F.2d at 17; *Estate of Gilmore v. Buckley,* 787 F.2d 714, 720–23 (1st Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). In other words, the fact that the state placed the victim in a "special confrontational encounter" with an assailant should not be relevant in determining whether the state had a "duty to protect" the victim, but rather in determining whether the state breached its duty to the victim, *i.e.,* whether the causation requirement for § 1983 liability has been established.

though the Court regards the question as concededly close, it is nevertheless satisfied that Deputy Sheriff Bost took sufficient affirmative actions such that he significantly increased plaintiff's special "danger of, or vulnerability to ... violence beyond the level it would have been absent state action," and that accordingly Deputy Sheriff Bost was under a constitutional duty to protect plaintiff from any acts of violence at the hands of Hull.[15] *Freeman v. Ferguson, supra,* 911 F.2d at 55; *see also Wells v. Walker, supra,* 852 F.2d at 371.

■■■■ The same conclusion cannot, however, be reached with respect to the remaining defendants. According to plaintiff's factual allegations, Deputy Sheriff Bost was the only defendant who was actually involved in the decision to release Hull. Plaintiff does not claim that Deputy Sheriff Bost's actions were in any way taken at the direction of any other defendant. Nor does she claim that his decision was in any way approved or acquiesced in by any other defendant. Rather, plaintiff's Amended Complaint simply attempts to impose § 1983 liability upon the remaining defendants for their respective participation in promulgating the policy and/or custom that did not prevent Hull's unsupervised release from the FCDC.[16] See Amended Complaint ¶¶ 22–24. While the Court has no trouble in concluding that these defendants' actions were sufficient to satisfy the "affirmative act" prong of the *Wells–Freeman* test, *see Nishiyama v. Dickson County, supra,* 814 F.2d at 282; *cf. Cornelius v. Town of Highland Lake, supra,* 880 F.2d at 356–58, the Court cannot conclude that these defendants' actions in any way resulted in plaintiff being exposed to a risk of harm that was greater than that faced by members of the general public. Plaintiff does not allege that defendants had any policy regard-

---

On balance, if a court is not inclined to adopt this causation analysis in its "right to protection" cases, a rule of "no right to protection" in vague "targeted danger" cases (such as the present case) seems to be more reasonable and defensible. The rationale of "a specific danger to the plaintiff not shared by the public at large" is simply too amorphous to be of much value outside those limited instances where the state acts with the specific intent to increase the danger faced by a private person, *e.g.,* where the state enlists a private individual to infiltrate a crime syndicate. *See, e.g., G–69 v. Degnan,* 745 F.Supp. 254 (D.N.J.1990). In the present case, for example, the danger to any individual in Hull's path from the FCDC to plaintiff's store can be said to be greater than that faced by the public at large (indeed, the same could be said of the danger that would have been faced in *Wells* by any individual who happened to have been inside the store at the time the victim in that case was attacked). And if the car with the groceries had been parked four blocks away, then anyone along the route to the car would (arguably) be subject to as much of an increased risk as the plaintiff here, but it appears that any such persons would, in this circuit, be precluded from recovering under § 1983, as their claims would likely fail the second prong of the *Wells–Freeman* test. Although the *Wells–Freeman* test seems to accurately predict liability in almost of the "right of protection" cases (but see *Nishiyama* ), it is difficult, as a matter of public policy (not to mention logic), to rationalize the distinctions that result from its application in these "right to protection" cases.

15. Of course, having exposed plaintiff to this danger, Deputy Sheriff Bost cannot now be heard to argue that he did not "omit[ ] the performance of affirmatively required conduct." Brief in Support of Defendants' Motion to Dismiss Amended Complaint at p. 4. " 'If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit.' " *Dorothy J. v. Little Rock Sch. Dist., supra,* 794 F.Supp. at 1418 (quoting *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982)).

16. Of course, § 1983 liability may not be imposed upon Fulton County (the County), the Quorum Court and Sheriff Martin under the doctrine of respondeat superior. *Monell v. Department of Social Servs. of New York, supra,* 436 U.S. at 691–94, 98 S.Ct. at 2036–38. Any "individual capacity" liability on behalf of Sheriff Martin and the members of the Quorum Court, as well as the County's liability (and the Quorum Court's), would, therefore, have to be based on these defendants' involvement in the promulgation and/or approval of the policy and/or custom that allowed the FCDC's trusty detainees to be released unsupervised. See *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–85, 106 S.Ct. 1292, 1298–1301, 89 L.Ed.2d 452 (1986); *Monroe v. Pape, supra,* 365 U.S. at 172–87, 81 S.Ct. at 476–84. Any "official capacity" liability upon Sheriff Martin, Deputy Sheriff Bost and the members of the Quorum Court would derive from the County's liability, as claims such as these are equivalent to claims against the County itself. See *Kentucky v. Graham,* 473 U.S. 159,

ing the release of trusty detainees that was in any way targeted at her. *Compare, e.g., Freeman v. Ferguson, supra,* 911 F.2d at 54–55. Instead, plaintiff has merely argued that these defendants should be held liable under § 1983 for having adopted a generally ill-advised policy and/or custom regarding trusty detainees. Whatever truth there may be in these allegations, they simply are insufficient to give rise to § 1983 liability. The generic (*i.e.,* unqualified) terms "custom" and "policy" refer to standards of conduct that are generally applicable throughout a community. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 166–67, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970); *see also Black's Law Dictionary* 461, 1317 (4th ed. 1968); *Webster Third International Dictionary* 559, 1754 (1966). Thus, even if defendants' policy and/or custom regarding the release of trusty detainees results in an increased risk of danger, any such danger will, by definition, apply with equal force to all members of the public within the geographic area encompassed by the restrictions (if any) upon the trusty's release. *Cf. Martinez, supra,* 444 U.S. at 285, 100 S.Ct. at 559. Accordingly, since plaintiff's § 1983 claim against the County, the Quorum Court (and its individual members), and Sheriff Martin is based upon their alleged adoption of a generally applicable policy and/or custom, her allegations are not, as a matter of law, sufficient to satisfy the "specific danger" prong of the *Wells–Freeman* test. Accordingly, the Court will grant defendants' motion to dismiss in so far as it relates to the § 1983 claim against these defendants.[17]

However, to say that Deputy Sheriff Bost was under a constitutional duty to protect plaintiff from Hull is only to begin the inquiry into whether he can be held liable for Hull's attack under § 1983. Section 1983 allows persons to recover for "constitutional torts." *See Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. at 484; *see also Farmer v.*

*Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994) (quoting *Collins v. City of Harker Heights, supra,* 503 U.S. at 123–25, 112 S.Ct. at 1068); *Coleman v. Monroe,* 977 F.2d 442, 444 (8th Cir.1992). Thus, like any other body of tort law, § 1983 recognizes an actionable tort only if: (1) the state has breached a constitutionally-imposed duty by not acting within the prescribed standard of care (*i.e.,* if the state has effected a constitutional deprivation); and (2) if the individual's injuries were proximately caused by this breach. *See Collins v. City of Harker Heights, supra,* 503 U.S. at 120–21, 112 S.Ct. at 1066; *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816–17, 105 S.Ct. 2427, 2432–33, 85 L.Ed.2d 791 (1985) (plurality opinion of Rehnquist, J.); *cf. Prosser and Keeton on the Law of Torts, supra,* § 1. Having determined that Deputy Sheriff Bost was under a constitutional duty to protect plaintiff, the next question to be answered is whether he failed to act within the appropriate standard of care. The Supreme Court has determined that § 1983 liability cannot be premised upon mere negligence, *Daniels v. Williams, supra,* 474 U.S. at 328, 106 S.Ct. at 663, and the Eighth Circuit has further concluded that such liability will not result from acts of gross negligence. *Gregory I, supra,* 921 F.2d at 756; *Myers v. Morris,* 810 F.2d 1437, 1468 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *see also Sellers ex rel. Sellers v. Baer, supra,* 28 F.3d at 902–03. Recklessness, however, will be sufficient for liability to attach under § 1983. *Gregory I, supra,* 921 F.2d at 756; *see also Sellers ex rel. Sellers v. Baer, supra,* 28 F.3d at 903; *Gregory II, supra,* 974 F.2d at 1013–14 (Heaney, J., dissenting).

It is at this point where plaintiff's case against Deputy Sheriff Bost stumbles, but it ultimately does not fall. In setting

---

165–68, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985).

**17.** There is a real irony in this conclusion. Deputy Sheriff Bost apparently had no role in creating the policy and/or custom that permitted him to release Hull. The other defendants did that. Yet, only Deputy Sheriff Bost's implementation of this policy and/or custom (by directing Hull to

go outside the FCDC and retrieve the groceries from the car) provides the requisite focus to the resulting danger such that plaintiff can maintain her § 1983 claim, and then only against him. It is at least arguable that Deputy Sheriff Bost's actions were the least culpable of all of the defendants, though his allowing Hull to remain outside the FCDC unsupervised while he left on personal business somewhat mitigates against this conclusion.

forth her § 1983 cause of action, plaintiff has stated her theory of the case as follows:

> Defendants intentionally created a dangerous situation for [plaintiff] in which they had an affirmative duty to protect [her] *and they unreasonable [sic] failed to do so.*
>
> . . . .
>
> The conduct of all separate defendants set out hereinabove was such that they knew, *or reasonably should have known,* that their conduct would naturally and probably result in injury to plaintiff, and separate defendants continued such conduct **in reckless disregard of the consequences,** entitling plaintiff[ ] . . . to punitive damages.

Amended Complaint ¶¶ 45, 47 (emphasizes added). Plaintiff's Amended Complaint, as well as her brief submitted in opposition to this motion, also states that Deputy Sheriff Bost acted "with deliberate or callous indifference to [plaintiff's] needs." *Id.* ¶ 40; Brief in Support of Response to Motion to Dismiss Amended Complaint at p. 4 (Docket No. 21). As indicated by the language underscored above, plaintiff appears to have couched her § 1983 claim in terms common to the law of negligence, arguing that Deputy Sheriff Bost was unreasonable in failing to comply with his constitutional duty to protect her from Hull. *Compare, e.g., Wells v. Walker, supra,* 852 F.2d at 371–72; *see generally Restatement (Second) of Torts* §§ 282–83 (1965). Further, plaintiff's allegations concerning Deputy Sheriff Bost's deliberate or callous indifference sound in terms which are often associated with the law of gross negligence, though the Court frankly recognizes that this is not always the case.[18] *Compare, e.g., Schwartz v. Sears, Roebuck & Co.,* 669 F.2d 1091, 1093 (5th Cir.1982) (gross negligence defined as deliberate indifference) *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 993 (1st Cir.1992) (deliberate indifference equated with gross negligence), *with City of Canton v. Harris,* 489 U.S. 378, 388 & nn. 7–8, 109 S.Ct. 1197, 1205 & nn. 7–8, 103 L.Ed.2d 412 (1989) (gross negligence viewed as something less than deliberate indifference, though this latter standard was not necessarily taken to be co-extensive with recklessness); *Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 & n. 7 (5th Cir.) (en banc) (same), *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). Finally, even though the language bolded above indicates that plaintiff's Amended Complaint contains a lone reference to the term "reckless," this reference does not seem targeted at her claim that Deputy Sheriff Bost breached his constitutional duty, but rather appears to be focused upon her claim for punitive damages.[19]

■ . Thus, if plaintiff's Amended Complaint were construed in accord with its plain language, a serious case could be made that she has failed to state a claim against Deputy Sheriff Bost, in that she has not alleged a violation of the appropriate standard of care. However, the Court's function is not to construe her Amended Complaint narrowly, but rather so "as to do substantial justice." Fed. R.Civ.P. 8(f). When plaintiff's Amended Complaint is viewed as a whole, *cf. Wells v. Walker, supra,* 852 F.2d at 371–72, the Court is satisfied that her allegations are sufficient

---

**18.** This confusion likely results from the fact that courts have had difficulty fashioning clear distinctions between the standards of gross negligence, recklessness, and deliberate or callous indifference. *See generally Prosser & Keeton on the Law of Torts, supra,* § 34 at 211–14. Indeed, the Supreme Court long ago recognized the difficulty of fashioning a satisfactory definition of "gross negligence." See *New York Cent. Railroad Co. v. Lockwood,* 84 U.S. (17 Wall.) 357, 372–74, 382–83, 21 L.Ed. 627 (1893). However, as the Eighth Circuit has indicated its intent to adopt such a distinction in the arena of § 1983 litigation, the Court will attempt to apply that distinction here.

**19.** Indeed, this portion of plaintiff's Amended Complaint appears to have been fashioned after Arkansas' model instruction relating to punitive damages. See *Arkansas Model Jury Instructions (Civil 3d)* § 2217 (1989). While § 1983 would allow punitive damages to be awarded against any of the individual defendants, *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Wright v. Jones,* 907 F.2d 848, 852 (8th Cir.1990), such damages would not be recoverable from the County or the Quorum Court. *Kentucky v. Graham, supra,* 473 U.S. at 167 n. 13, 105 S.Ct. at 3106 n. 13; *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266–71, 101 S.Ct. 2748, 2759–62, 69 L.Ed.2d 616 (1981).

to permit proof of facts which could support a finding of recklessness on behalf of Deputy Sheriff Bost. For purposes of assessing § 1983 liability, the Court believes that a police officer who grants an unsupervised release to a detainee with a known history of violent and/or sexually deviant behavior could be found, by a reasonable trier-of-fact, to have acted recklessly. *See Nishiyama v. Dickson County, supra,* 814 F.2d at 282; *Cornelius v. Town of Highland Lake, supra,* 880 F.2d at 356–58.

Given this conclusion, there is but one more hurdle, namely causation, that stands in the way of plaintiff establishing a *prima facie* case against Deputy Sheriff Bost under § 1983, and in light of the facts alleged in her Amended Complaint she clears this barrier easily. For many of the reasons expressed in support of its conclusion that Deputy Sheriff Bost owed plaintiff a constitutional duty of protection, the Court also concludes that his actions could be found to have proximately caused the harms suffered by plaintiff. See *supra* note 14. As has previously been discussed, it is clear that plaintiff's § 1983 claim is based upon Deputy Sheriff Bost's involvement in the implementation of the policy and/or custom that allowed for Hull's unsupervised release from the FCDC. Thus, in determining whether his conduct proximately caused plaintiff's injuries, the relevant inquiry is: Would plaintiff's injuries have been avoided had Deputy Sheriff Bost exercised appropriate care in determining whether to allow Hull, a detainee with a history of violent and sexually assaultive conduct, to be released unsupervised from the FCDC pursuant to the policy and/or custom then in effect? *See Ricketts v. City of Columbia, supra,* 36 F.3d at 779 (quoting *City of Canton v. Harris, supra,* 489 U.S. at 391, 109 S.Ct. at 1206). In the context of the present case, the Court believes that a reasonable jury could answer "yes" to this question. Accordingly, Deputy Sheriff Bost may be held liable to plaintiff under § 1983. *See Gregory I, supra,* 921 F.2d at 757.

## IV.

Having determined that Deputy Sheriff Bost was obligated, under the Four-

teenth Amendment, to protect plaintiff from Hull, and that as a direct result of his failure to do so she was deprived of a constitutionally-protected liberty interest, the Court must now address Deputy Sheriff Bost's second argument in support of his motion to dismiss, namely that the doctrine of qualified immunity insulates him from § 1983 liability. This argument can be disposed of rather quickly. Qualified immunity exists in order to "strike[ ] a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." *Wyatt v. Cole,* 504 U.S. 158, 167, 112 S.Ct. 1827, 1833, 118 L.Ed.2d 504 (1992); *see also Elder v. Holloway,* —— U.S. ——, ——, 114 S.Ct. 1019, 1022, 127 L.Ed.2d 344 (1994). Therefore, to insure that state actors are not unduly hampered in the exercise of their official duties, § 1983 liability will attach only when their actions can be said to have violated a person's "clearly established" constitutional rights, the existence of which a reasonable person would (or should) have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993). For purposes of this doctrine, a right is "clearly established" if "[t]he contours of the right [were] . . . sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *see also Brown v. Nix,* 33 F.3d 951, 953 (8th Cir.1994).

At the time plaintiff's § 1983 cause of action accrued, *DeShaney, Wells, Freeman, Nishiyama,* and *Cornelius* had all been decided. And even though courts are still arguing over what those cases mean when applied to differing factual scenarios, the Court is satisfied that Deputy Sheriff Bost was (or should have been) on notice that if his affirmative actions increased the risk of harm to a particular individual, he would be constitutionally required to protect that individual from any such harm at the hands of private individuals. Consequently, the Court concludes that plaintiff's Fourteenth Amendment "right of protection" was "clearly established" at

the time of Hull's assault. *See Foulks v. Cole County*, 991 F.2d 454, 456–57 (8th Cir. 1993); *cf. Sellers ex rel. Sellers v. Baer, supra*, 28 F.3d at 900 n. 6 (suggesting that qualified immunity would not be available in "failure to protect" or "right of protection" cases that accrued subsequent to *Wells v. Walker*). Although the Court recognizes that determining whether a "right of protection" exists in a particular case involves a necessarily fact-intensive inquiry (and thereby makes the precise contours of this right difficult to define), *see Freeman v. Ferguson, supra*, 911 F.2d at 55, this fact cannot be sufficient to support a finding of qualified immunity. *Cf. id; cf. also Dunn v. Carroll*, 40 F.3d 287, 293 (8th Cir.1994). Were the Court to conclude otherwise, a plaintiff would be entitled to recover in a "right of protection" case only if the defendant's actions mirrored the fact pattern of a previously decided case, a result which is at odds with the basic purpose of the qualified immunity doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (The relevant inquiry for evaluating a qualified immunity claim "is a question of law: whether the legal norms allegedly violated by the defendant[s] were clearly established at the time of the challenged actions."); *see also Pinder v. Commissioners of Cambridge*, 821 F.Supp. 376, 402 (D.Md. 1993), *aff'd sub nom. Pinder v. Johnson,* 33 F.3d 368 (4th Cir.), *reh'g granted and opinion vacated* (Oct. 14, 1994). Rather, since the legal basis for the potential genesis of this "right of protection" was well-established at the time plaintiff's § 1983 cause of action accrued, this alone is sufficient to defeat any claim of qualified immunity based upon the application of this legal principle to a specific fact situation. *See Mitchell v. Forsyth, supra*, 472 U.S. at 528, 105 S.Ct. at 2816; *see also Anderson v. Creighton, supra*, 483 U.S. at 640–41, 107 S.Ct. at 3039–40. Thus, the Court concludes that the doctrine of qualified immunity does not apply in this case. *Ac-*

*cord Pinder v. Johnson,* 33 F.3d 368, 372–74 (4th Cir.), *reh'g granted and opinion vacated* (Oct. 14, 1994); *Pinder v. Commissioners of Cambridge, supra*, 821 F.Supp. at 398–403; *but see Pinder v. Johnson, supra*, 33 F.3d at 374–76 (Roney, J., dissenting); *but cf. Dorothy J. v. Little Rock Sch. Dist., supra*, 794 F.Supp. at 1423. Accordingly, Deputy Sheriff Bost's motion to dismiss will be denied in so far as it relates to plaintiff's § 1983 claim.

### V.

■ The Court now turns to examine defendants' motion to dismiss as it relates to plaintiff's pendant state law claims. Defendants argue that these claims must be dismissed because, under Arkansas law, the are immune from any such suits in tort. Defendants' argument is based upon Ark.Code Ann. § 21–9–301 (Michie Supp.1993), which provides in relevant part:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, ... and all other political subdivisions of the state shall be immune from liability and from suit for damages, except to the extent that they may be covered by liability insurance.[20] No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

There is no question that the County is a political subdivision of the State of Arkansas, Ark.Code Ann. § 12–14–102 (Michie 1987), nor is there any doubt that it enjoys whatever immunity is afforded by § 21–9–301, as counties are expressly included within the class of "political subdivisions" protected by the statute. *See Cousins v. Dennis*, 298 Ark. 310, 312, 767 S.W.2d 296, 297 (1989). The Quorum Court is also a "political subdivision" under Arkansas law, *see* Ark. Const. amend. 55; Ark.Code Ann. § 14–14–502 (Michie 1987), thus it likewise benefits from any immunity afforded by § 21–9–301,[21] *cf. Cousins*

---

**20.** No party has suggested that this "insurance exception" has any application in this case, nor is there any evidence in the record to suggest the existence of any such insurance.

**21.** Although the Quorum Court is the County's legislative body, *see* Ark.Code Ann. § 14–14–502(a)(1) (Michie 1987), neither the Quorum

Court nor its individual members (nor Sheriff Martin) has argued that Arkansas law (*e.g.,* the Speech and Debate Clause of the Arkansas Constitution, Ark. Const. art. V, § 15) affords them absolute legislative immunity for tort claims based upon their legislative functions. *Compare, e.g., Kilbourn v. Thompson*, 103 U.S. 168, 26

*v. Dennis, supra,* 298 Ark. at 312, 767 S.W.2d at 297, as do any employees of these political subdivisions, *e.g.,* the individually-named defendants, for claims brought against them in their official capacities. *Loren D. Buttolph Trust v. Jarnagan,* 302 Ark. 393, 394–95, 789 S.W.2d 466, 467 (1990); *Matthews v. Martin,* 280 Ark. 345, 346, 658 S.W.2d 374, 375 (1983). Further, in the context of this case § 21–9–301 also provides the individually-named defendants with immunity for all covered claims brought against them in their individual capacities, as these defendants are alleged to have violated a duty of care imposed upon them only by virtue of their official positions (as opposed to a duty that is generally applicable to society as a whole).[22] *See Hardin v. City of DeValls Bluff,* 256 Ark. 480, 508 S.W.2d 559 (1974); *see also Autry v. Lawrence,* 286 Ark. 501, 503, 696 S.W.2d 315, 316 (1985); *Matthews v. Martin, supra,* 280 Ark. at 346, 658 S.W.2d at 375. Accordingly, as there is no doubt that § 21–9–301 prevents a person from recovering for the negligence of a political subdivision, or for its employees' negligent performance of their official duties, *Deitsch v. Tillery,* 309 Ark. 401, 407, 833 S.W.2d 760, 762 (1992); *Waire v. Joseph,* 308 Ark. 528, 531, 825 S.W.2d 594, 597 (1992); *Cousins v. Dennis, supra,* 298 Ark. at 312, 767 S.W.2d at 297, it is clear that plaintiff's claim of negligence (Count III) against all of the defendants must be dismissed for failure to state a claim, and defendants' motion will be granted in this respect.

■ Defendants also contend that § 21–9–301 immunizes them from liability on plaintiff's remaining state law tort claims. In this context, defendants' reliance upon § 21–9–301 is misplaced. In addition to her claim of negligence, plaintiff has put forward claims under the torts of outrage[23] (Count II), battery (Count IV), assault (Count V), and false imprisonment (Count VI), which, as we all know, are intentional torts.[24] As such, they fall outside the purview of § 21–9–301, since this statute "does not provide immunity for the intentional acts of [political subdivisions] or their employees." *Deitsch v. Tillery, supra,* 309 Ark. at 407, 833 S.W.2d at 762; *see also West Memphis Sch. Dist. No. 4 v. Circuit Court of Crittenden County,* 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994). However, even though § 21–9–301 does not provide defendants with immunity from plaintiff's intentional tort claims, this conclusion does not necessarily mean that she will be permitted to further prosecute these claims.

■ As the allegations of plaintiff's Amended Complaint make plain, she does not claim that any of the defendants actually inflicted upon her any battery, assault, or condition of false imprisonment. Rather, plaintiff's Amended Complaint explicitly states that the only person alleged to have engaged in such conduct was Hull. See Amended Complaint ¶¶ 62–78. Thus, it is clear that plaintiff's claims for battery, assault and false imprisonment are based upon the common assumption that defendants can be liable for the intentional torts committed

L.Ed. 377 (1880) (defining the scope of legislative immunity afforded by the Constitution's Speech and Debate Clause, U.S. Const. Art. I, § 6). In accord with Arkansas law, since these defendants have chosen not to research and brief this question, the Court leaves this issue for another day. *See Gardner v. State,* 296 Ark. 41, 63, 754 S.W.2d 518, 529 (1988); *accord Seniority Research Group v. Chrysler Motor Corp.,* 976 F.2d 1185, 1189 (8th Cir.1992).

**22.** Thus, while the pleading distinction between "official capacity" liability and "individual capacity" liability remains relevant in § 1983 actions alleging official misconduct by public officials, see *Kentucky v. Graham, supra,* 473 U.S. at 165–67, 105 S.Ct. at 3104–06, this distinction is of no moment when determining the scope of the immunity afforded by § 21–9–301 in any analogous tort actions.

**23.** Outside of Arkansas, the tort of outrage is more commonly known as the tort of intentional infliction of emotional distress. See *Ross v. Patterson,* 307 Ark. 68, 70, 817 S.W.2d 418, 420 (1991).

**24.** See *Oglesby v. Baptist Med. Sys.,* 319 Ark. 280, 891 S.W.2d 48, 51 (1995) (battery); *Thornton v. Squyres,* 317 Ark. 374, 376, 877 S.W.2d 921, 922 (1994) (outrage); *Deitsch v. Tillery, supra,* 309 Ark. at 411, 833 S.W.2d at 765 (Hays, J., dissenting) (assault); *Wal–Mart Stores, Inc. v. Yarbrough,* 284 Ark. 345, 348–51, 681 S.W.2d 359, 361–63 (1984) (false imprisonment); see also *Restatement (Second) of Torts* §§ 13, 18, 21, 35, 46 (1965).

by a third person, namely Hull. Unfortunately, in the context of the present case this assumption manifests a misunderstanding of basic principles of tort and agency law. Although it is clear, as a general matter, that absent an agency (or some other substantial) relationship a person cannot be held vicariously liable for the torts of another, *see generally Prosser & Keeton on the Law of Torts, supra,* §§ 69–73; *Restatement (Second) of Agency* §§ 216, 219, 245 (1958); *Restatement (Second) of Torts* §§ 315–20 (1965), under Arkansas common law it appears that Hull can, in fact, be viewed as defendants' agent, at least in so far as he was enlisted to perform various services for them as a trusty detainee. *See Ward v. Young,* 42 Ark. 542, 545–53 (1884). However, it is well-established that a principal can be held liable for the intentional torts of its agent only when the agent's tortious conduct is taken in furtherance of the agency, *i.e.,* where the agent is (ostensibly) acting for the benefit of the principal. *See National Bank of Commerce v. HCA Health Servs. of Midwest, Inc.,* 304 Ark. 55, 58, 800 S.W.2d 694, 697 (1990); *Dillard Dept. Stores, Inc. v. Stuckey,* 256 Ark. 881, 882–83, 511 S.W.2d 154, 155 (1974); *St. Louis, Iron Mountain & So. Ry. Co. v. Grant,* 75 Ark. 579, 584–86, 88 S.W. 580, 582–83 (1905); *see also Restatement (Second) of Agency* §§ 219(2)(d), 245 (1958). Plaintiff has not alleged that Hull's attack was in any way related to the performance of his duties as a trusty detainee (*e.g.,* that one of the defendants ordered him to attack her), nor has she claimed that Hull's attack was motivated by his desire to benefit any one of the defendants (*i.e.,* that he was attempting to act in furtherance of his agency). Therefore, even though Hull was defendants' agent (albeit for limited purposes), as a matter of law defendants cannot, under the facts alleged be held liable for Hull's tortious conduct toward plaintiff. Accordingly, defendants' motion to dismiss will be granted in so far as it pertains to plaintiff's claims for battery, assault and false imprisonment.

The Court also concludes that plaintiff's factual allegations are insufficient, as a matter of law, to state a claim against any of the defendants under Arkansas' tort of outrage. Arkansas courts have "consis-

tently taken a narrow view in recognizing claims for the tort of outrage." *City of Green Forest v. Morse,* 316 Ark. 540, 542, 873 S.W.2d 155, 156 (1994). Indeed, the Arkansas Supreme Court has taken great care to point out that this tort does not make actionable every "'insult or indignity one must endure in life,'" *Dillard Dept. Stores, Inc. v. Adams,* 315 Ark. 303, 305, 867 S.W.2d 442, 443 (1993) (quoting *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 244, 743 S.W.2d 380, 383 (1988)), but instead provides a basis for recovery only for "conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *M.B.M. Co. v. Counce,* 268 Ark. 269, 280, 596 S.W.2d 681, 687 (1980); *see also Qualls v. Hickory Springs Mfg. Co.,* 994 F.2d 505, 510 (8th Cir.1993). In order to establish a *prima facie* case for her outrage claim, plaintiff must show:

(1) the actor[s] intended to inflict emotional distress or willfully and wantonly knew or should have known that emotional distress was the likely result of [their] conduct; (2) the conduct was extreme and outrageous ...; (3) the actions of the defendant[s] were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Thornton v. Squyres, supra,* 317 Ark. at 376, 877 S.W.2d at 922; *see also M.B.M. Co. v. Counce, supra,* 268 Ark. at 277–280, 596 S.W.2d at 685–87. It must also be remembered that "[t]he tort of outrage is not easily established; merely describing conduct as outrageous does not make it so. Clear-cut proof is necessary to establish the four elements" of this tort. *Cordes v. Outdoor Living Ctr., Inc.,* 301 Ark. 26, 34, 781 S.W.2d 31, 35 (1989).

As a threshold matter, the Court must determine if the conduct complained of by plaintiff was sufficiently "outrageous" so as to be actionable. If it was not, the Court need not inquire further into the remaining elements of plaintiff's outrage claim. *See Smith v. American Greetings Corp.,* 304 Ark.

596, 601, 804 S.W.2d 683, 686 (1991); *Givens v. Hixson,* 275 Ark. 370, 372, 631 S.W.2d 263, 264 (1982); *see also Restatement (Second) of Torts* § 46 cmt. h (1965). Plaintiff contends that "[b]y allowing Lawrence Hull to leave the [FCDC] unescorted, knowing of his history of violence towards women," defendants engaged in a course of conduct sufficient to be actionable under the tort of outrage. The Court disagrees. In affording Hull trusty status, and thereby allowing him the opportunity to leave the FCDC unsupervised, defendants were, according to plaintiff's allegations, see Amended Complaint ¶¶ 35–38, simply acting in accordance with their general policies and practices regarding trusty detainees.[25] Classifying detainees (and prisoners) as trusties, and thereby affording them liberties beyond those enjoyed by other detainees (or prisoners), is a practice that is apparently well-known not only in Arkansas, but in other states as well. *Cf. Carchman v. Nash,* 473 U.S. 716, 730 n. 8, 105 S.Ct. 3401, 3409 n. 8, 87 L.Ed.2d 516 (1985) (quoting *Cooper v. Lockhart,* 489 F.2d 308, 314 n. 10 (8th Cir.1973)). Plaintiff does not argue that defendants are (or were) legally prohibited from classifying persons held at the FCDC as trusty detainees, and the Court can find no authority to support such a proposition (nor is it inclined to make new law in this area). Thus, it follows that by granting Hull trusty status and allowing him to leave the FCDC unsupervised, defendants acted in a manner that was legally authorized, or that was at least not legally proscribed. This fact alone precludes plaintiff's outrage claim, for in "doing no more than [they] ha[d] a legal right to do," defendants' conduct, even if improper (and therefore potentially actionable under § 1983 and common law negligence), "does not equate with outrageous conduct" as defined by the Arkansas courts. *Neff v. St. Paul Fire & Marine Ins. Co.,* 304 Ark. 18, 22, 799 S.W.2d 795, 797 (1990); *cf. Restatement (Second) of Torts* § 46 cmt. g (1965).

Moreover, even if the Court were to conclude that defendants' conduct was suffi-ciently egregious as to be actionable under the tort of outrage, the Court would nevertheless conclude that plaintiff's outrage claim must be dismissed. A tort of outrage occurs only when a person engages in a course of outrageous conduct with the intent to inflict extreme emotional distress upon another. *See M.B.M. Co. v. Counce, supra,* 268 Ark. at 280, 596 S.W.2d at 687. However, there is no allegation that any of the defendants intended for harm to befall plaintiff when Hull was released from the FCDC, nor has plaintiff alleged any facts which would arguably suggest that Hull's attack was a substantially certain or highly probable consequence of his unsupervised release. Indeed, as the Court has previously discussed, Hull's release can at most be said to have resulted from defendants' recklessness in adopting and/or implementing the FCDC's policies and practices regarding trusty detainees. Such generic acts of recklessness, however, do not represent a sufficiently culpable state of mind to support a claim of outrage. *Cf. Ross v. Patterson, supra,* 307 Ark. at 73–74, 817 S.W.2d at 421–22; *Restatement (Second) of Torts* § 46 cmt. i (1965). Accordingly, since plaintiff has failed to allege sufficient facts to establish no less than two of the *prima facie* elements of the tort of outrage, defendants' motion to dismiss will be granted in so far as it relates to plaintiff's outrage claim.

## VI.

In accordance with the terms outlined in this Memorandum Opinion, it is hereby ORDERED that defendants' Motion to Dismiss Amended Complaint[26] be, and it is hereby, GRANTED IN PART. The Court will accordingly dismiss: (1) plaintiff's cause of action under § 1983 against Fulton County, the Fulton County Quorum Court, the individual members of the Fulton County Quorum Court, Sheriff Martin, in his official and individual capacities, and Deputy Sheriff Bost, in his official capacity; and (2) plaintiff's state law claims for battery, assault, false imprisonment, outrage and negligence against all defendants. IT IS FURTHER ORDERED that defendants' motion to dismiss be, and it

---

25. Indeed, it must be remembered that this factual assertion was critical to plaintiff's efforts to sustain her § 1983 claim.

26. Docket No. 18.

is hereby, DENIED IN PART, limited to plaintiff's cause of action under § 1983 against Deputy Sheriff Bost, in his individual capacity.

IT IS SO ORDERED.